# Exhibit A

1
2 RODNEY TRUDELL, *pro se*
3 604 N Bragaw
4 Anchorage Alaska 99508
5

Mr. Cooper LLC

OCT 9 2024

Legal Dept.

6
7 **IN THE DISTRICT COURT FOR THE STATE OF ALASKA THIRD JUDICIAL**
8 **DISTRICT, AT ANCHORAGE**
9
10
11
12 **RODNEY L. TRUDELL** , Pro Per

13 Plaintiff,
14
15
16 vs.                                              NO. _3AN-24-09048CI_
17
18 **HILLARY R. MCCORMACK**
19 **COAST 2 COAST FUNDING GROUP, INC.,**          **QUIET TITLE ACTION**
20 **MR. COOPER/NATIONSTAR MORTGAGE LLC.**         **VERIFIED COMPLAINT**
21 **AND JOHN DOES (Investors) 1-10,000,**
22 *et al,*            **Defendant(s).**
23
24
25 Re: Original Note/Loan No: **310500390:** APN: **2004-041-17-000** Deed of Trust Record
26 No: 2008006291-0 Recorded on: 02/06/2008
27 Commonly Known Address: 604 N. BRAGAW STREET, ANCHORAGE ALASKA
28 99508
29
30 Legal Description: The South one-third (S 1/3) of the East one-half (E ½) of Lot 3, Block
31 20, Mountain View Subdivision, according to the official plat thereof, filed under Plat No.
32 P-5, records of the Anchorage Recording District, Third Judicial District, State of Alaska..
33
34 **QUIET TITLE ACTION VERIFIED COMPLAINT**
35
36 **I. Jurisdiction and**
37
38 Property is in ALASKA THIRD JUDICIAL DISTRICT, AT ANCHORAGE and therefore falls
39
40

**RODNEY L. TRUDELL**

41 under this Honorable Court's jurisdiction. Real Estate is governed by State Law and therefore
42 this Court has priority Jurisdiction. The
43 Plaintiff lives in the **ALASKA THIRD JUDICIAL DISTRICT, AT ANCHORAGE** and the
44 Defendant has done extensive business in the District.
45

46
47

48 ## II. JUDICIAL NOTICE

49 Plaintiff moves this Honorable Court to take Mandatory Judicial Notice under the Federal Rules

50 of Civil Procedure Rule 201 (d) of the following:

51 a. The United States Supreme Court, in *Haines v Kerner* 404 U.S. 519 (1972), said that

52 all litigants defending themselves must be afforded the opportunity to present their evidence and that

53 the Court should look to the substance of the complaint rather than the form.

54 b. In *Platsky v CIA,* 953 F.2d 26 (2nd Cir. 1991), the Circuit Court of Appeals allowed

55 that the District Court should have explained to the litigant proceeding without a lawyer, the

56 correct form to the plaintiff so that he could have amended his pleadings accordingly. Plaintiff

57 respectfully reserves the right to amend this complaint.

58 c. Under the Federal Rules of Evidence 1002 and 1003 governing the admissibility of

59 duplicates, any photocopies brought in as evidence are considered to be forgeries. It is unfair to

60 admit a photocopy in the place of an original as there are information contained within the

61 original that is not in a photocopy, specifically the only legally binding chain of title to the

62 promissory note.

63 d. Under Uniform Commercial Code - ARTICLE 3 -§3-308, all signatures presented that

64 is not on an original format (with the original wet ink signature) is hereby denied and is

65 inadmissible.

66 e. No Artificial Intelligence have been used to prepare this document.

67

**RODNEY L. TRUDELL**

68

69 **III. Parties**

70      1) The Plaintiff is RODNEY L. TRUDELL

71           who is the legal title owners of the real estate property located in this District

**RODNEY L. TRUDELL**

2) The Defendant NATIONSTAR MORTGAGE LLC.,, who is the current servicer of the promissory note wishing to lay claim on the property as a real party of interest.

3) The Defendant COAST 2 COAST FUNDING GROUP, INC, who was the original "lender" on the

Deed of Trust (see Exhibit A), promissory note and has not provided a lawful assignment or

transfer to any other Defendant on the property that proves them a real party of interest.

4) The Defendant NATIONSTARMORTGAGELLC. , who had all beneficial interest assigned to them

without a lawful assignment or transfer to them who also fail to lay claim on the property as a

real party of interest.

## IV. PLAIN STATEMENTS OF FACT ...........

PLAINTIFF RODNEY L. TRUDELL WAS A VICTIM OF FEDERAL DUAL TRACKING FORCED FORECLOSURE CONDUCT ON BEHALF COAST 2 COAST FUNDING GROUP AND NATIONSTAR MORTGAGE LLC. A CLEAR VIOLATION OF 12 C.F.R. § 1024.41 AND ALASKA LAW AMC 12.15.015(G).

In 2022 when Plaintiff, Rodney L. Trudell was current on his mortgage payments, but seeking a. lower Interest rate and payment, the Plaintiff Rodney L. Trudell contacted Nationstar Mortgage LLC.
and/or it's representative company Mr. COOPER concerning its original loan and loan number **310500390, seeking to mitigate or refinance.** Nationstar Mortgage LLC informed Rodney L. Trudell that they only provide loan modifications and not reorganization/ Refinancing. Nationstar Mortgage LLC informed Plaintiff Rodney L Trudell that in Order to qualify for a modification of the Plaintiff's rate and payment, the Plaintiff, Rodney L Trudell must become delinquent on his mortgage before the application Process could be initiated .

RODNEY L. TRUDELL.                    Page 4 of 36

## DUAL TRACKING VIOLATIONS 12 C.F.R. § 1024.41 AND
## ALASKA LAW AMC 12.15.015(G).

A. **Further Restrictions on Starting a Foreclosure Even if a borrower is more than 120 days delinquent, if that borrower submits a complete loss mitigation application before the servicer makes the first notice or filing required to initiate a foreclosure process, the servicer can't start the foreclosure process unless:**

**The servicer informs the borrower that the borrower is not eligible for any loss mitigation option, and any appeal has been exhausted The borrower rejects all loss mitigation offers, or The borrower fails to comply with the terms of a loss mitigation option such as a trial modification. (12 C.F.R. § 1024.41 (2024).)**

B. **OTHER IMPORTANT DISTURBING FACTS OF THE INSTITUTIONAL LENDING THAT OCCURRED AND THE UNINFORMED USE OF AND THE INACCURATE REPORTING OF CREDIT PER [15 USCS 1601 et seq.].**

12

Plaintiff Rodney L. Trudell Declares and makes the court aware that the Defendant which is

13

COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC.,did not lend me money, they only arranged credit. To clarify to the court Money or

15

Monies are funds that are already in circulation in the form of cash or ledger balance in a bank or

16.

institution as cash or acceptable instruments have been deposited. In order for cash to be loaned,

17

18

COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC. must have evidence of their possession of cash and the transfer to the Plaintiff. This is

19

the only way defendant COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC. would be able to prove claim that they had funds at risk they claimed

RODNEY L. TRUDELL.                    Page 5 of 36

20  they lent me. Credit is the creation of that cash by the signer of an instrument such as a mortgage note or

21  credit card holder at no risk to anyone COAST 2 COAST FUNDING GROUP  said funds were

22  wired to escrow, not one cent of  COAST  2. COAST FUNDING GROUP

23

   deposit, investment or retirement dollars left the bank or

24  financial institution. Instead those funds were created for me and by me, based on my NAME, SOCIAL

**RODNEY L. TRUDELL.**         **Page 6 of 36**

1    SECURITY NUMBER and credit rating. The details for the creation of these funds are outlined in my

2    unrebutted AFFIDAVIT OF TRUTH, which has been duly acknowledged by COAST 2 COAST

3    FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC. by my RESPA mandated Qualified

4    Written Request. COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC.

5    did no more for me than the mortgage broker, they simply arranged the credit.

6    COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC. made money on the

7    transaction as did the mortgage broker. The reason COAST 2 COAST FUNDING GROUP., and/or

8    NATIONSTAR MORTGAGE LLC. will not present the Original Note to

9    this Court in this case or any other case is because they do not have it in their possession, or if they do, it

10    is not in the (Unaltered) form required by law that it must be maintained in to enforce this alleged

11    indebtedness. The Note itself states that "the presentment of the note is the only evidence of the debt".

12    COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC. is counting on this

13    COURT remaining ignorant of these facts or the COURT being deferential to the banks and not

14    dispensing justice and/or Due Process in order to continue perpetrating this fraud on ME this COURT and

15    perhaps the entire Nation in order to unjustly enrich COAST 2 COAST FUNDING GROUP., and/or

16    NATIONSTAR MORTGAGE LLC. These

17    facts are becoming abundantly clear to all Americans.

18    The Plaintiff has reason to believe that the Defendant was not the real party of interest for the loan he

19    made with COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR MORTGAGE LLC. As a

20    result, seek to obtain clarification from the Defendant.

21        On 07/10/2024, Plaintiff did send to Defendant via certified mail a Request for production of

22    document requesting the original wet ink signature to establish proof of claim within 30 days. They were

23    informed that failure to provide proof of claim within 30 days will be taken as an administrative default.

24    The Defendant only provided a photocopy of the Deed of Trust. This document failed to link the original

25    lender to the Defendant.

26  On 07/10/2024, Plaintiff did send to Defendant via certified mail a second Request for
27 Production of document requesting proof of claim. With this second request, Plaintiff informed that
28 should Defendant failed to produce proof of claim within 21 days; they will have exhausted their
29 administrative remedy to provide valid proof of claim. The Defendant again only provided a photocopy
30 of the Deed of Trust while ignoring the Plaintiff's request for verification of debt point for point as
31 required under the Real Estate Settlement Procedures Act (RESPA). This document also failed to link the
32 original lender to the Defendant.

33

34 Plaintiff will be recording a Notice of NOTICE OF RESCISSION OF TRUSTEE'S DEED AND A
35 NOTICE OF QUIET TITLE AND CONSENT TO JUDGMENT against the Defendant in the
36 ANCHORAGE DISTRICT RECORDER's Office on the Defendant for lack of proof of claim, Which
37 will settle this and other claims and place this matter outside the court's jurisdiction. Plaintiff has
38 notified Defendant and gave Defendant the opportunity to contest the Notice.

39 The Defendant failed to respond to the notice. Plaintiff has elected to not record the Notice of Default at
40 this time to further give the Defendant, through this legal complaint, one more opportunity for proof of
41 claim.

42  On or about 07/01/22 COAST 2 COAST FUNDING GROUP., and/or NATIONSTAR
43 MORTGAGE LLC. successor in interest to COAST 2 COAST FUNDING GROUP., and/or
44 NATIONSTAR MORTGAGE LLC....., assigned the Deed of Trust to NATIONSTAR MORTGAGE LLC
45 in a secret recording away from the viewing eyes of the public (Exhibit C) "Corporate Assignment of
46 Deed " and without reference to my Account Parcel Number, APN: 2004-041-17-000. Which would have
47 allowed me to become aware of the recording. In what appears to be a deliberate attempt to conceal the
48 initiation of a non Judicial foreclosure action while actively accepting payments and negotiating
49 mitigation terms with the Plaintiff, in direct violation of Dual Tracking restrictions placed on all loan
50 servicers by Dodd Frank and promulgated by the Consumer Financial Protection Bureau CFPB. This
51 violation of 12 C.F.R. § 1024.41 is not inconsequential, it lead to property and title theft of the Plaintiffs
52 property located at 604 N. Bragaw Street, Anchorage Alaska 99508. This is also a violation of ALASKA
53 LAW AMC 12.15.015(G). .....

54

55 The document in question was prepared by Association Servicing under a document called "Assignment
56 of Deed of Trust" (Exhibit C). This document was executed by a Tracy Rogers . Clearly NATIONSTAR
57 MORTGAGE LLC was out of business at that time and no such assignment could have been legally done
58 by TRACY ROGERS. No corresponding notice was ever sent to the Plaintiff as required by Alaska Civil
59 Code.

## V. CLAIMS AND GENERAL ALLEGATIONS

For this matter, Defendant is and/or may be the listed Defendant, any and all parties Defendant refuses to reveal to Plaintiff and/or this Court, irrespective of whether or not said party and/or parties are known to this Court and/or Plaintiff and/or Defendant, the Corporate *ens legis* entity Defendant is employed by and/or is an officer thereof, and/or any other parity and/or parties, indispensable or not, any

RODNEY L. TRUDELL

1

2  and all other party and/or parties receiving any pecuniary gain from, through, and/or by.

3  Defendant's fraudulent act(s). Singular may be inclusive of plural and plural may be inclusive

4  of singular.

4           Plaintiff hereby questions the authenticity of ALL dates and/or ALL signatures by ALL

5  parties on ALL documents, including without limitations, notarized documents, "contracts",
   "deeds",

6  "titles", affidavits, and/or the like, including without limitations the dates and/or signatures by notary

7  publics, officers, employees, and any and ALL parties attesting to any and ALL claims, facts,

8  accounting,

9  transfers, when the funds transferred from the Defendant to the title company and/or closing

10  agent, recordings, publications, and/or the like, etc.

10          Plaintiff disavows any and ALL implied and/or conferred and/or inferred

11  "understanding" of "*legalese*" terms now and at the time of the "signing" of any and ALL of the

12.  documents pertaining to this
   action.

13          Plaintiff disavows any and ALL presumptions made by this Court, Defendant, and any

14.  and ALL other parties when said presumption may be detrimental to Plaintiff's interest and/or case.

15          Plaintiff hereby demands ALL of Plaintiff's Rights be protected by this Court, including

16.  without limitations, State and Federal Constitutionally protected Rights, God given Rights, Civil Rights,

17  Human Rights, Rights protected by Treaty(s), and/or ALL privileges and/or immunities, and/or the like.

18          Plaintiff hereby demands this Court refuse to commit, and act to prevent Defendant from

19.  committing, any and ALL acts barratrou in nature.

20          Plaintiff hereby demands ALL applicable Rules of Court, Rules of Procedures, Laws,

21  and/or Statutes be adhered to without preference for any party.

22          Plaintiff makes this statement: "I sent Defendant a Qualified Written Request (QWR), a

23

**RODNEY L. TRUDELL**                **Page 10 of 36**

24    Written Notice of Loan/Credit Dispute, and a Notice of Loan Rescission and Defendant's in which the

25    Defendant received it on 07/20/20124 In accordance with Section 6 of RESPA (12 U.S.C. Section 2605,

26    The Defendant was to provide me with written acknowledgment within 20 Business Days (08/20/2024)

27    receipt of my request. No such acknowledgement was received by me during that time, which left me

uncertain they even considered my request for more understanding. I did however, receive on 09/8/2024 by mail from the Defendant as a "response" dated 07/14/2024 which failed to answer my written request in accordance to RESPA. Instead, they were very vague, condescending and cavalier as to assert that I had no right to inquire the facts of the "contract" Defendant stipulate I am liable to, and only supplied me denial to even address my concerns. This "Non-Response", response, I took as Defendant's confession they knew they were committing fraud against me because they knew they are not the CREDITOR. If Defendant had responded in full accordance to the RESPA QWR then Defendant would have done so because they were the CREDITOR, but since Defendant did not respond as required by law for a CREDITOR to do, then Defendant has confessed Defendant knows it is not the CREDITOR. That is how I discovered Defendant committed fraud against me." I have attached the Defendant's 2/14/2011 dated "response" and my "Affidavit of Truth" (Exhibit E) as attachments hereto.

       If Defendant attempts to fight this matter in court then Defendant knowingly, intelligently, and willfully must come to court WITHOUT "clean hands."

       Plaintiff comes to this court with "clean hands" and as a civilian and a laymen and attempts only to seek justice and equity in accordance with ALASKA law.


**1. Title is clouded.**

       The Plaintiff believes and alleges that there are significant controversy and clouding of the title to the property and Deed of Trust, and motions this court to enter a judgment for a Quiet Title Action, in favor of the Plaintiff.    The Plaintiff motions the court to order all parties with legal claim to stipulate and provide proof of claim against the above Deed of Trust, or else release their claim.

       The "Lender" as defined under the Deed of Trust is the COAST 2 COAST FUNDING GROUP (see Exhibit A).

       There is no evidence of transfer of ownership from the original lender to either of the Defendants.

RODNEY L. TRUDELL

26    Therefore, the Plaintiff alleges that the Defendant is not a real and beneficial party of interest.

Case 3:24-cv-00244-SLG    Document 6-1    Filed 11/27/24    Page 14 of 69

Defendant admits that the promissory note which the above Deed of Trust secures has been ..,..

securitized (See Exhibit B). …..

Under United States Supreme Court decision of Carpenter v. Longan, 83 U.S. 16 Wall. 271 271

(1872), the Deed of Trust follows the Promissory note. Where the promissory note goes, the Deed of

Trust must follow.

Defendant admits that they are a servicer and is not a real party of interest. (See Exhibit B).

Under CFR Title 12: Banks and Banking PART 226—TRUTH IN LENDING (REGULATION Z), a

servicer do not have the rights of a Lender

Defendant admits having to have fully sold their interest in the promissory note in full as

governed under Financial Accounting Standard Rule 140 (FAS 140).

Under FAS 140, the seller of an asset must sell the asset to a third party as an arm's length

transaction. Once an asset has been sold, the seller forever loses control of the asset.

Furthermore, under FAS 140, the seller may not repurchase the asset for the purposes of

"reattachment". The seller may only repurchase the asset in an open market transaction as <u>an unsecured</u>

<u>note</u>.

16       A servicer of a promissory note does not have the rights of a holder in due course and is not a

17       real 20 and beneficial party of interest under U.S. Code Title 12: Part 226 (a) 1 - Truth in.

18       Lending (Regulation Z).

23     The Plaintiff alleges that the Defendant lacks Standing to enforce the negotiable instrument since they are

not the real party of interest (having sold their interest to the REMIC).

24        Under Federal Rules of Civil Procedure 17, an action must be taken in the name of a real party.

of interest. Since the Defendant is not a real and beneficial party of interest, the Defendant cannot be a.

party to this controversy.

27

1

2        Under IRS rules governing ownership interest of an asset, tax must be paid by the owner of the

3 promissory note for all interest/income/profits earned.

4

5        Since the promissory note is securitized into a REMIC (Real Estate Mortgage Investment 6

Conduit) which is a SPV (Special Purpose Vehicle) for the purposes of tax exemption and direct

pass

7 through in which <u>only the individual shareholders</u> pay the tax for any profits earned.

8

9.        In the Securitization Audit (Exhibit D), validates and confirms that the promissory note has indeed been included in the REMIC. The REMIC is identified as "Washington Mutual Asset-Backed

10

11. Certificates, WMABS Series 2006-HE1 SIC: 6189 ASSET-BACKED SECURITIES", therefore this is prima facia evidence that the loan has been

securitized.

12

13        Therefore, the Plaintiff alleges that the real and beneficial interest holders of the promissory note are the <u>individual shareholders of the REMIC.</u>

14

15.        Since <u>no one party represents a real party of interest</u>, then <u>no one party may enforce the</u> <u>promissory note.</u>

16

17        Under State Civil Code, a foreclosure must be done by a party entitled to enforce the promissory

18 | note. The party must show evidence of the debt and standing. There is no evidence that the Defendant

19 | has standing in this matter.

20 | If the Defendant alleges they have reacquired the promissory note for the purposes of.

foreclosure, 21 then the Defendant is bringing fraud before the court per CFR Title 12: Part 226 (a) 1.

22 | A loan, once securitized is permanently converted into a stock. It is registered in the SEC

23 | database as a permanent fixture to the REMIC. In the event of a default, the REMIC (and

therefore the 24 individual shareholders) write off the debt and receives tax credit for the write

off. Therefore, the debt is

25 | discharged. The Plaintiff alleges that the debt has been discharged in full.

26

27

Since the language of the Deed of Trust in Exhibit A says "This Deed of Trust Secures a Promissory Note", and since the promissory note is not enforceable by any ONE PARTY, then the Deed of Trust is therefore invalid. Further, since the debt has been discharged, then the Deed of Trust is doubly invalid.

As the owner and grantor of real property, the Plaintiff has a duty and right to defend the title to his/her property. Since there are significant controversy over who the real parties of interest are in the Deed of Trust, the Plaintiff hereby Moves this Court to enter an Order compelling all parties who can lay lawful claim on the Deed of Trust to do so by presentment of valid enforceable proof of claim. If no one party can come forth to claim perfected security interest in the Deed of Trust, then the Plaintiff Moves this court to Declare the Deed of Trust to be null and void.

**2. Invalid Corporate Assignment of the Deed of Trust**

In the Assignment of Deed of Trust (Exhibit C), Nationstar Mortgage LLC assumes title interest in the property due to bank failure and ultimate merger. Under real estate law, all Security Instruments must be transferred by the "Beneficiary" or a clear chain of title must exist with all parties being notified of such assignment. Because there was a bank buy out, all assets may go directly to purchasing party, but all

Security Instruments must follow chain of title by being properly assigned by original "lender". This was an invalid assignment where both the original Deed of Trust and Promissory Note should have changed hands at time of merger/bank buy out in order to establish clear real estate title transfer. Any recordings against the property constitutes slander of title.

Plaintiff Rodney L Trudell was the Trustor on the original Deed of Trust which he was the only signatory to theDeedofTrust. As Trustor, Rodney L Trudell appointed Land Title of Alaska Inc. as

24 | Trustee. And there is no law or provision of the Deed of Trust that prohibits the appointment of a

25 | Substitute Trustee, particularly in the case of breach of contract, which plaintiff alleges here.

26 |

27 |       The Lender as defined on page 1 of the Deed of Trust (Exhibit A) is COAST 2 COAST

28 | FUNDING GROUP . This paragraph does not state that successors, assigns, or nominees may appoint a

29 | Successor Trustee or Assign the Deed of Trust.

RODNEY L. TRUDELL

The United States Bankruptcy Court for the Eastern District of California has issued a ruling

dated May 20, 2010 in the matter of In Re: Walker, Case No. 10-21656-E-11 which found that MERS

could not, as a matter of law, have transferred the note to Citibank from the original lender, Bayrock

Mortgage Corp. The Court's opinion is headlined stating that MERS and Citibank are not the real

parties 6 in interest.

The court found that MERS acted "only as a nominee" for Bayrock under the Deed of Trust and 6there was no evidence that the note was transferred. The opinion also provides that "several courts have

acknowledged that MERS is not the owner of the underlying note and therefore could not transfer.

the note, the beneficial interest in the deed of trust, or foreclose on the property secured by the

deed", citing the well-known cases of In Re Vargas (California Bankruptcy Court), Landmark v.

Kesler (Kansas decision as to lack of authority of MERS), LaSalle Bank v. Lamy (New York), and

In Re Foreclosure Cases (the "Boyko" decision from Ohio Federal Court CASE NO.

NO.1:07CV2282, 07CV2532,

07CV2560, 07CV2602, 07CV2631, 07CV2638, 07CV2681, 07CV2695 , 07CV2920, 07CV2930,

07CV2949, 07CV2950, 07CV3000, 07CV3029).

The opinion states: "Since no evidence of MERS' ownership of the underlying note has been

offered, and other courts have concluded that MERS does not own the underlying notes, this court is

convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own the

underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt

to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under

California law."

23      Therefore, The Assignment of Deed of Trust is invalid as it was executed by an officer of

COAST 2 COASTFUNDINGGROUP, successor in interest to NATIONSTAR MORTGAGE

LLC and not the lender.

25

26

27

1

2 **3. Unclear Chain of Title**

3      In order to demonstrate that the Defendant is the real and beneficial party of interest, and

4 therefore having the authority to foreclose or enforce the promissory note, there must be a clear

and

5 unbroken chain of title for both the Deed of Trust and the Promissory note.

6 In a recent ruling in the Massachusetts Supreme Court in US Bank National Association v Ibanez

7 (No. SJC-10694. Dated October 7, 2010 - January 7, 20110), it was unanimously ruled as
follows:

8

9

     *"One of the terms of the power of sale that must be strictly adhered to is the restriction on who is*
10 *entitled to foreclose. The "statutory power of sale" can be exercised by "the mortgagee or his*
11 *executors, administrators, successors or assigns." G.L. c. 183, § 21. Under G.L. c. 244, § 14,*

12

*"[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by*
13 *the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian*
14 *or conservator of such mortgage or person acting in the name of such mortgagee or person" is*
15 *empowered to exercise the statutory power of sale. Any effort to foreclose by a party lacking*

16

*"jurisdiction and authority" to carry out a foreclosure under these statutes is void. Chace v.*

17

*Morse, 189 Mass. 559, 561 (1905), citing Moore v. Dick, supra. See Davenport v. HSBC Bank*

**RODNEY L. TRUDELL**

19   *USA, 275 Mich.App. 344, 347-348 (2007) (attempt to foreclose by party that had not yet been*

20   *assigned mortgage results in "structural defect that goes to the very heart of defendant's ability to*

21   *foreclose by advertisement," and renders foreclosure sale void)."*

22

23   And further:

24   *"For the plaintiffs to obtain the judicial declaration of clear title that they seek, they had to prove*

25   *their authority to foreclose under the power of sale and show their compliance with the*

26   *requirements on which this authority rests. Here, the plaintiffs were not the original mortgagees*

27

1

2   *to whom the power of sale was granted; rather, they claimed the authority to foreclose as the*

3   *eventual assignees of the original mortgagees. Under the plain language of G.L. c. 183, § 21, and*

4   *G.L. c. 244, § 14, the plaintiffs had the authority to exercise the power of sale contained in the*

5   *Ibanez and LaRace mortgages only if they were the assignees of the mortgages at the time of the*

6   *notice of sale and the subsequent foreclosure sale. See In re Schwartz, 366 B.R. 265, 269*

7   *(Bankr.D.Mass.2007) ("Acquiring the mortgage after the entry and foreclosure sale does not*

8   *satisfy the Massachusetts statute"). [FN18] See also Jeff-Ray Corp. v. Jacobson, 566 So.2d 885,*

9

   *886 (Fla.Dist.Ct.App.1990) (per curiam) (foreclosure action could not be based on assignment of*

10   *mortgage dated four months after commencement of foreclosure proceeding)."*

11

12

And: 13

   *"Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land*

14.   *that requires a writing signed by the grantor. See G.L. c. 183, § 3; Saint Patrick's Religious,*

15

*Educ. & Charitable Ass'n v. Hale, 227 Mass. 175, 177 (1917)." a*

And:

> *"there must be proof that the assignment was made by a party that itself held the mortgage. See*
>
> *In re Samuels, 415 B.R. 8, 20 (Bankr.D.Mass.2009). A foreclosing entity may provide a complete*
>
> *chain of assignments linking it to the record holder of the mortgage, or a single assignment from*
>
> *the record holder of the mortgage. See In re Parrish, 326 B.R. 708, 720 (Bankr.N.D.Ohio 2005)*
>
> *("If the claimant acquired the note and mortgage from the original lender or from another party*
>
> *who acquired it from the original lender, the claimant can meet its burden through evidence that*
>
> *traces the loan from the original lender to the claimant"). The key in either case is that the*
>
> *foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to*
>
> *identify itself as the present holder in the notice and in order to have the authority to foreclose*
>
> *under the power of sale (or the foreclosing entity must be one of the parties authorized to*
>
> *foreclose under G.L. c. 183, § 21, and G.L. c. 244, § 14)."*

While it is true that under ALASKA Civil Code AS 34.20.070 the party wishing to foreclose does need to show any proof of claim as long as proper due process is followed. Here, the Defendant through

NATIONSTAR MORTGAGE LLC and HILLARY R. MCCORMACK failed to follow proper ALASKA civil Code in giving proper notice to the Plaintiff for the Notice of Default nor the Assignment of Deed of Trust.

Further, ALASKA Civil Code confers the Power of Sale to the mortgagee/lender.

Defendant NATIONSTAR MORTGAGE neither, under ALASKA Civil Code Endorsement, a specific endorsement by delivery of the promissory note must be made to the party who becomes the

holder of the instrument. Here, there is no evidence to show or even suggest that this was ever done.

Currently, there is no clear chain of title for the Promissory note that links the original lender to the Defendant. Without a clear chain of title **specifically naming** the Defendant as the holder in due course, the Defendant cannot claim to be the real and beneficial party of interest by merely stating it to be course, the Defendant cannot claim to be the real and beneficial party of interest by merely stating it to be so.

Further, since the promissory note has been securitized, this has further clouded the issue of who is the real and beneficial holder in due course.

The Plaintiff alleges that the Defendant is acting in fraud to commit theft.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully moves this Honorable Court to enter a judgment ordering the following remedies:

1.) The Corporate Assignment of Deed of Trust Recorded by Hillary R. McCormack assigning. Interest in the property to Nationstar Mortgage LLC. be deemed null and void.
2.) Declare the Trustee's Deed to be null and void.
3.) Declare the Promissory note to be fully discharged.
4.) Demand Nationstar restoration of the property and title to Rodney L. Trudell to the position Before mitigation began and a transmittal be given to the credit bureaus indicating " Paid As Agreed"
5.) Granting any such other relief as is necessary and appropriate.

The Plaintiff verified that these statements are true and correct to the best of his knowledge under penalty of perjury.

RESPECTFULLY SUBMITTED: This 27th day of September in the year, of our Lord, 2024.

_/s/ Rodney L. Trudell_____

Rodney L. Trudell

604 N Bragaw Street
Anchorage, Alaska, 99508

27

RODNEY L. TRUDELL

Case 3:24-cv-00244-SLG    Document 6-1    Filed 11/27/24    Page 25 of 69

**Exhibit A - Deed of Trust**

1

2

3

4

20

21

22

23

5

6

7

8

9

10

11

12

13

14

15

24

25

26

27

1
2
3
4
16
17
18
19
20
21
22
23

**Exhibit C: Assignment of Deed of Trust**

5
6
7
8
9
10
11
24
25
26
27

THOMAS B AYER, TRUSTEE OF THE THOMAS B AYER REVOCABLE TRUST D 2004 QUIET TITLE ACTION          Page 28 of 36

1
2
3
4

## Exhibit E: Affidavit of Truth

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
24
25
26
27

THOMAS B AYER, TRUSTEE OF THE THOMAS B AYER REVOCABLE TRUST D 2004 QUIET TITLE ACTION

1

2

3

4

20

21

22

23

24

25

26

27

THOMAS B AYER, TRUSTEE OF THE THOMAS B AYER REVOCABLE TRUST D 2004 QUIET TITLE ACTION          Page 32 of 36

1
2
3
4

1
2   **IN THE DISTRICT COURT FOR THE STATE OF ALASKA THIRD JUDICIAL**
3                        **DISTRICT, AT ANCHORAGE**
4                                   ***
5
6  RODNEY L.  TRUDELL                , Pro Per
7                                     Plaintiff,
8

                                              NO. <u>3AN-24-09048CI</u>

                VS.
   HILLARY R. MCCORMACK                        CERTIFICATE OF SERVICE

   MR. COOPER/NATIONSTAR MORTGAGE LLC.

   COAST 2 COAST FUNDING GROUP INC.


   AND JOHN DOES (Investors) 1-10,000,
   *et al,*
9                Defendant(s).
10
11     I certify that on _____ day of September 2024, I served a copy of the foregoing complaint by the
12                         method indicated below on the following:
13

   | HILLARY R. MCCORMACK | X | Process Serer |
   | HALLIDAY WATKINS & MANN | | First Class Mail |
   | 376 EAST 400 SOUTH # 300 | | Electronic Mail |

24

25

26

27
   **THOMAS B AYER, TRUSTEE OF THE THOMAS B AYER REVOCABLE TRUST D 2004 QUIET TITLE ACTION**   **Page 33 of 36**

1

2

3

4

| | |
|---|---|
| SALT LAKE , UTAH 84111 | ☐ Facsimile<br>☐ Process Server<br>☐ Federal Express |
| COAST 2 COAST FUNDING GROUP<br>1 ORCHARD ROAD, STE. 100<br>LAKE FOREST,  CA 92630 | ☒ First Class Mail<br>☐ Electronic Mail<br>☐ Facsimile<br>☐ Process Server<br>☐ Federal Express |
| MR. COOPER<br>NATIONSTAR MORTGAGE LLC<br>8950 CYPRESS WATERS BOULEVARD<br>DALLAS,  TEXAS 75019 | ☐ Hand Delivery<br>☐ First Class Mail<br>☐ Electronic Mail<br>☐ Facsimile<br>☒ Process Server<br>☐ Federal Express |

14
15
16
17
24
25
26
27

Dated this _____27_____ day of September 2024.

                              BY: _____ /s/ Rodney L. Trudell _____, agent for
                                   RODNEY L. TRUDELL  HOMEOWNER
                                                          , *pro se*
                                   Signed reserving all my rights at UCC 1-308

                                   Rodney L. Trudell, *pro per*
                                   604 N Bragaw Street
                                   Anchorage,  Alaska 99508

1
2
3
4
19
20
21
22
23

24
25
26
27

**RODNEY L. TRUDELL**

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Rodney L. Trudell

_____
                    Plaintiff(s),

vs.

Coast 2 Coast Funding Group Inc.

_____
                    Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3AN- 24- 09048CI

**SUMMONS AND**
**NOTICE TO BOTH PARTIES**
**OF JUDICIAL ASSIGNMENT**

To Defendant: _John Does (Investors) 1-10,000_

You are hereby summoned and required to file with the court a written answer to the complaint
which accompanies this summons. Your answer must be filed with the court at 825 W. 4th
Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In
addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if
unrepresented) Rodney L. Trudell_____, whose address is:
604 N Bragaw Street, Anchorage, Alaska 99508_____.

If you fail to file your answer within the required time, a default judgment may be entered
against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in
this case, in writing, of your current mailing address and any future changes to your mailing
address and telephone number. You may use court form *Notice of Change of Address /
Telephone Number* (TF-955), available at the clerk's office or on the court system's website at
https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you
have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

☒  This case has been assigned to Superior Court Judge _Hartz_____.
    and to a magistrate judge.

☐  This case has been assigned to District Court Judge _____

CLERK OF COURT

_09-27-2024_
    Date

By: _Zachary Hannah_
        Deputy Clerk

I certify that on _09-27-24_ a copy of this Summons was   ☒ mailed   ☐ given to
☒ plaintiff   ☐ plaintiff's counsel along with a copy of the
☐ Domestic Relations Procedural Order   ☒ Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk _NH_

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If
you have been served with this summons outside the United States, you also have 40 days to
file your answer.

CIV-100 ANCH (10/17)(cs)                                    Civil Rules 4, 5, 12, 42(c), 55
SUMMONS

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Rodney L. Trudell

_____ )
                 Plaintiff(s), )
                               )
vs,                            )
                               )
Coast 2 Coast Funding Group Imc. )    CASE NO. 3AN-24 - 09 048C I
                               )
_____ )         **SUMMONS AND**
                 Defendant(s). )       **NOTICE TO BOTH PARTIES**
                               )       **OF JUDICIAL ASSIGNMENT**

To Defendant: Coast 2 Coast Funding Group Inc.

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) Rodney L. Trudell _____, whose address is:
604 N Bragaw Street, Anchorage, Alaska 99508

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

☒  This case has been assigned to Superior Court Judge ___Hartz___.
    and to a magistrate judge.

☐  This case has been assigned to District Court Judge _____.

                                        CLERK OF COURT

___09-27-2024___                        By: ___Jawluf Hunanh___
       Date                                      Deputy Clerk

I certify that on __09-27-24__ a copy of this Summons was  ☑ mailed  ☐ given to
☑ plaintiff  ☐ plaintiff's counsel along with a copy of the
☐ Domestic Relations Procedural Order  ☒ Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk __NH__

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 ANCH (10/17)(cs)                        Civil Rules 4, 5, 12, 42(c), 55
SUMMONS

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

RODNEY L. TRDELL )
_____ )
Plaintiff(s), )
)
vs. )
)
MR.COOPER/NATIOSTAR MORTGAGE )   CASE NO. 3AN- 24 - 09048C1
_____ )
Defendant(s). )   **SUMMONS AND**
_____ )   **NOTICE TO BOTH PARTIES**
                            **OF JUDICIAL ASSIGNMENT**

To Defendant: <u>MR. COOPER/NATIONSTAR Hortgage LLC</u>

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) <u>Rodney L. Trudell ( Self)</u>_____, whose address is: <u>604 N Bragaw Street, Anchorage AK 99508</u>_____.

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

[X] This case has been assigned to Superior Court Judge ___Hartz___.
    and to a magistrate judge.

[ ] This case has been assigned to District Court Judge _____.

CLERK OF COURT

_09-27-2024_          By: _____
Date                            Deputy Clerk

I certify that on _09-27-24_ a copy of this Summons was [✓] mailed [ ] given to
[✓] plaintiff [ ] plaintiff's counsel along with a copy of the
[ ] Domestic Relations Procedural Order [ ] Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk _NH_

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 ANCH (10/17)(cs)          Civil Rules 4, 5, 12, 42(c), 55
SUMMONS

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Rodney L. Trudell

            Plaintiff(s),

vs.

HILLARY R. MCCORMACK

            Defendant(s).

CASE NO. 3AN- 24 - 09048 CI

**SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

To Defendant: HILLARY R. MCCORMACK

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) Rodney L. Trudell                              , whose address is:
604 N Bragaw Street, Anchorage, Alaska 99508

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

## NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

☒ This case has been assigned to Superior Court Judge _Hartz_
and to a magistrate judge.

☐ This case has been assigned to District Court Judge _____.

                                     CLERK OF COURT

_09-27-2024_
Date

By: _[signature]_
            Deputy Clerk

I certify that on _09-27-24_ a copy of this Summons was ☑ mailed ☐ given to
☑ plaintiff ☐ plaintiff's counsel along with a copy of the
☐ Domestic Relations Procedural Order ☒ Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk _N H_

\* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 ANCH (10/17)(cs)
SUMMONS

Civil Rules 4, 5, 12, 42(c), 55

When recorded, return to:
**WILLOW AIR INC.**

**1751 N. JANTZEN ROAD**

**PORTLAND OR 97217**

<u>Above Space for Recorder's Use Only</u>

ATTACHMENT/EXHIBIT-E
*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

ADDENDUM TO - RIGHT TO CANCEL RE:
UNCONTROVERTED MATTERS OF RECORD
(Pursuant to C.F.R. § 1024.41 DUAL TRACKING, 15 USCS
1640(k) DEFENSE TO FORECLOSURE & CIVIL
LIABILITY and 15 USCS 1635(B) NOTICE OF
RESCISSION and RESPA claims undisputed and Alaska Law
AMC 12.15.015(G).)

# AFFIDAVIT
of Rodney L. Trudell

Re: Original Note/Loan No: 310500390: APN: 2004-041-17-000 Deed of Trust Record No:
2008006291-0 Recorded on: 02/06/2008

Legal Description: The South one-third (S 1/3) of the East one-half (E ½) of Lot 3, Block
20, Mountain View Subdivision, according to the official plat thereof, filed under Plat No.
P-5, records of the Anchorage Recording District, Third Judicial District, State of Alaska..

Commonly Known Address: 604 N. BRAGAW STREET, ANCHORAGE ALASKA 99508

"Indeed, No more than affidavits are necessary to make the prima facie case."
United States v. Kis, 658 F 2nd, 526, 536 (7thCir. 1981); Cert Denied,50 U.S. L.W. 2 169; S.
Ct. March 22, 1982

Comes **now**........ (hereinafter "affiant ") a sentient, living man, being first duly

sworn/affirmed - and does depose, say, declare, and affirm by affiant's signature that I am

over the age of 18 years and have first hand personal knowledge of the following statements

and affirm the same are true and correct to the best of affiant's knowledge and belief, to wit:

## PLAIN STATEMENTS OF FACT

PLAINTIFF RODNEY L. TRUDELL WAS A VICTIM OF FEDERAL DUAL TRACKING FORCED FORECLOSURE CONDUCT ON BEHALF COAST 2 COAST FUNDING GROUP AND NATIONSTAR MORTGAGE LLC. A clear violation of 12 C.F.R. § 1024.41, and Alaska Law AMC 12.15.015(G).

In 2022 when I Plaintiff, Rodney L. Trudell was current on my mortgage payments, but seeking a lower Interest rate and payment, I Rodney L. Trudell contacted Nationstar Mortgage LLC. And/or it's representative company Mr. COOPER concerning my original loan and loan number 310500390, seeking to mitigate or refinance. Nationstar Mortgage LLC informed me the affiant, Rodney L. Trudell that they only provide loan modifications and not reorganization/Refinancing. Nationstar Mortgage LLC informed Plaintiff Rodney L Trudell that in order to qualify for a modification of the Plaintiff's rate and payment, the Plaintiff, Rodney L Trudell must become delinquent on his mortgage before the application Process could be initiated.

In the process of applying and signing a modification agreement and while making payments as agreed upon with the loan servicers MR. COOPER and NATIONSTAR MORTGAGE LLC. I discovered that they had initiated a non Judicial foreclosure Action against me in a deliberate attempt to steal my property out from under me. This forced foreclosure action has caused me to send notifications to MR. COOPER AND NATIONSTAR MORTGAGE LLC of breach of contract per the BORROWERS COVENANT in the Deed of Trust dated 02/06/2008 and as such I am claiming torturous interference and pain and suffering.

And due to the breach of Trust per the Deed of Trust, as Trustor I am exercising my contractual and statutory authority under Sections 15. NOTICES. By the preponderance of Notification, Sections 16.RULES OF CONSTRUCTION , allowing the other party to agree by silence to the terms I set forward in my notification to COAST 2 COAST FUNDING GROUP and it's ASSIGNEE NATIONSTAR MORTGAGE LLC.

And as Trustor I am further exercising my BORROWERS COVENANT by defending my property and title against all liens claims and encumbrances of record, specifically Sections

18. TRANSFER OF PROPERTY OR BENEFICIAL INTEREST IN BORROWER by appointment of Substitute Trustee with Power of Sale with authority per Sections 22. REMEDIES to Reconvey and convey title without warranty to person or persons legally entitled to warranty per the Deed of Trust dated 02/06/2008. Affiant reserves the right to exercise these and other provisions of the contract and statutes to press his claims against the violators until equity is achieved.

1.) That, affiant was induced to believe by certain officers/employees of COAST 2

COAST FUNDING GROUP INC. and NATIONSTAR MORTGAGE LLC (hereinafter,

bank/bank's/lender) and further by the bank's advertising, that said bank had money of its

own to loan to affiant and others.

2.) That, affiant took the bank up on its offer to loan affiant its money, and affiant did

sign a promissory note/loan dated 2/06/2008.

3.) That, the bank did also induce affiant to sign a "security agreement/instrument"

dated 2/06/2008, granting the bank a secured interest and lien in/on certain personal

property of affiant currently held/owned or Otherwise acquired. The bank caused affiant to

believe this "security agreement/instrument" was necessary for the bank to protect and

insure its valuable and lawful consideration', i.e., the loaning of its money to affiant as

advertised and promised.

4.) That, the bank did further induce affiant into signing a Deed of Trust the bank

and/or its cohorts created, dated 2/06/2008, wherein the bank did cause other undeserving

third parties to obtain alien against, a security interest in, and complete control over the

affiant's personal property. Again, the bank led affiant to believe this Deed of

**Affidavit of** Rodney L. Trudell

Trust/assignment was necessary to further secure the bank's valuable, lawful, consideration against any potential 'risk or loss' regarding loaning the affiant its money.

5.) That prior to the affiant signing any of the bank's required financial documents, and forever thereafter, none of the bank's officers/employees have ever fully described and categorized all of the

6.) particulars, details, and principles of law regarding the bank's entire purported 'loan' process, including, but not limited to, just exactly where the 'money' was coming from to fund the note/loan, how it was obtained/created, and by whom.

7.) That, by and through the affiant's signing of all the all the aforesaid financial instruments, the bank caused affiant to believe that a binding, lawful contract was created between the bank, its agents, assigns, and affiant.

8.) That prior to, and at the lime of affiant signing all the bank's required financial instruments as instructed, affiant was very unlearned and unsophisticated in such banking and financial matters, including a total lack of knowledge of all the various underlying, undisclosed details, particulars – and legal consequences

9.) pertaining to the same. To the contrary, the unsophisticated affiant relied wholly and entirely upon the bank having 'clean hands' operating in 'good faith', and providing affiant with full, complete, and truthful disclosure of the entire financial transaction(s).

Affidavit of Rodney L. Trudell

10.)    That, regardless of any funds secretly or covertly obtained by the bank (via affiant's note/loan/Trust

Deed) while said bank acts as a for-profit business with and through the US Treasury for the

purpose to access and thereby expand the credit of this affiant's individual treasury account

while at all times failing to disclose the use of this affiant's negotiable paper (i.e. affiant's

note/mortgage) while trading as a for-profit entity on the bond and securities market

through any of its interagency cohorts/institutions such as Fannie Mae, Freddie

Mac, or otherwise; while also apparently failing to file IRS Form 1099OID (OriginalIssue

Discount) on each of the herein referenced transactions and thereby send a copy of said

formto affiant for his tax records. It has been established that this affiant as well as other

Americans have, out of necessity and the related remedy attaching thereto having its origin

out of HJR-192, are in fact the only substantive "source" and consumer to sponsor virtually

ALL credit that issues for commercial purposes. Said credit being necessary for the

Treasuryto have access to a valid source of credit to monetize and thereby disburse to the

federal reserve banks for various and sundry federal projects while accounting forall such

credit/funding entered into circulation through the aforesaid federal reserve banks. The

nature of such funding has been verified by the U.S. Department of Treasury as emanating

by and through the UCC Contract Trust Account of the named trust/entity Thomas Ayer

UCC CONTRACT TRUST ACCOUNT No. XXX-XX-XXXX and Treasury noted

Exemption from Levy No.

XXX-XX-XXXX, to include such other similar individual trusts as may exist.

**Affidavit of** Rodney L. Trudell

IN CONCLUSION - Due to other research, further understanding, and for all of the reasons set forth above and throughout this affidavit (to include the document entitled "Addendum C") all of which the affiant incorporates herein in its entirety - has caused affiant to believe ALL notes/mortgage/Deed

or other instruments entered into by the affiant between the bank/lender and any/all of its agents, assigns and beneficiaries have no legal force or binding affect, and the same are in fact - **Null and Void**.

Further affiant saycth naught,

By:_____

RODNEY L. TRUDELL,  HOMEOWNER AFFIANT

## **JURAT**

STATE OF ALASKA                              )
ANCHORAGE RECORDING DISTRICT    )
         ss.                                              )

On this _____ day of September, 2024, I certify that I know or have satisfactory evidence that Thomas Ayer is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated he was authorized to execute the instrument and acknowledged it, to be the free and voluntary act for the uses and purposes mentioned in the instrument.

_____
Notary Signature

**Affidavit of** Rodney L. Trudell

Page 6 of 7

Printed Name: _____    Notary

Public in and for the State of Alaska        Residing at:

_____, Alaska

My Appointment Expires: _____

"If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

# EXHIBIT A



# EXHIBIT A

After Recording Return To:
COAST 2 COAST FUNDING GROUP, INC.
1 ORCHARD ROAD, SUITE 100
LAKE FOREST, CALIFORNIA 92630
Loan Number: 10500390

96661-L      ————— [Space Above This Line For Recording Data] —————     CCC

## DEED OF TRUST

**MIN:** 100497100000083861

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated   FEBRUARY 5, 2008   , together with all Riders to this document.
**(B)** "Borrower" is   RODNEY L TRUDELL, AN UNMARRIED PERSON


Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is   COAST 2 COAST FUNDING GROUP, INC.

Lender is a   CALIFORNIA CORPORATION        organized
and existing under the laws of   CALIFORNIA
Lender's address is   1 ORCHARD ROAD, SUITE 100, LAKE FOREST, CALIFORNIA
92630

**(D)** "Trustee" is   LAND TITLE COMPANY OF ALASKA, INC.
951 BOGARD ROAD, SUITE 100, WASILLA, ALASKA 99654

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated   FEBRUARY 5, 2008
The Note states that Borrower owes Lender   ONE HUNDRED FIFTY-SIX THOUSAND SIXTY
AND 00/100           Dollars (U.S. $   156,060.00     ) plus interest.

---

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic *eFormus* 800-649-1362
Form 3002 01/01        Page 1 of 14                 www.docmagic.com

Description: Anchorage,AK Document - Year.DocID 2008.6291 Page: 1 of 15
Order: LLeech Comment:

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 1, 2038.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Planned Unit Development Rider
☐ Balloon Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider  ☐ Second Home Rider
☐ Condominium Rider  ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's



2 of 15

2008-006291-0

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the of ANCHORAGE

[Type of Recording District]                                                      [Name of Recording District]

<u>THIRD</u> Judicial District:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 004-041-17-000

which currently has the address of   604 N BRAGAW STREET
[Street]

ANCHORAGE                        , Alaska    99508    ("Property Address"):
[City]                                               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *eFarms* 800-649-1362
Form 3002 01/01                                  Page 3 of 14                        www.docmagic.com

3 of 15
2008-006291-0

Description: Anchorage AK Document - Year DocID 2008.6291 Page: 3 of 15
Order: LLeech Comment:

any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3002 01/01
Page 4 of 14

DocMagic *eRorms* 800-649-1362
www.docmagic.com

4 of 15

2008-006291-0

Description: Anchorage AK Document-Year.DocID 2008.6291 Page: 4 of 15
Order: LLeech Comment:

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT · MERS
Form 3002 01/01
Page 5 of 14
DocMagic *CFamms* 800-649-1362
www.docmagic.com



5 of 15
2008-006291-0

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3002 01/01
Page 6 of 14

DocMagic *EForms* 800-649-1362
www.docmagic.com

6 of 15

2008-006291-0

Description: Anchorage,AK Document - Year DocID 2008.6291 Page: 6 of 15
Order: LLeech Comment:

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3002 01/01
Page 7 of 14

DocMagic *@Rorms* 800-649-1362
www.docmagic.com

7 of 15
2008-006291-0

Description: Anchorage AK Document - Year.DocID 2008.6291 Page: 7 of 15
Order: LLeech Comment:

Case 3:24-cv-00244-SLG   Document 6-1   Filed 11/27/24   Page 56 of 69

Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums



8 of 15
2008-006291-0

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

*DocMagic* *EFORMS* 800-649-1362
www.docmagic.com



9 of 15
2008-006291-0

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such

DocMagic *C*Forms* 800-649-1362
www.docmagic.com



10 of 15

2008-006291-0

other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3002 01/01
Page 11 of 14

DocMagic *EFCRMS* 800-649-1362
www.docmagic.com

11 of 15
2008-006291-0

Description: Anchorage AK Document-Year.DocID 2008.6281 Page: 11 of 15
Order: LLeech Comment:

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and those remedies permitted by Applicable Law may be invoked. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Lender may bring suit in any court of competent jurisdiction to foreclose the lien of this Security Instrument judicially and/or obtain judgment on the Note which it secures. Any election by Lender to invoke the power of sale provisions of this Section 22 shall not be considered a final and binding election of remedies that would preclude such a judicial foreclosure, until conclusion of the sale of the Property by the Trustee as described in this Section 22.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each Recording District in which any part of the Property is located. Lender or Trustee shall mail copies of the notice to the persons and in the manner prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a



12 of 15

2008-006291-0

fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Right to Demand Full Payoff.** Notwithstanding Section 19 or any other provision of this Security Instrument, if a notice of default under this Security Instrument shall have been recorded two or more times previously and the default shall have been cured pursuant to Section 19 and Applicable Law, Lender shall have the right to refuse to accept a subsequent cure of a subsequent default under Section 19 and shall be entitled to proceed with foreclosure of this Security Instrument unless Borrower pays all sums secured by this Security Instrument. Acceptance by Lender of a cure of the subsequent default giving rise to the foreclosure shall not constitute a waiver of the right to reject a cure and proceed with foreclosure in the event of any future default.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
RODNEY L TRUDELL          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                        Witness:

_____         _____

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3002 01/01
Page 13 of 14

DocMagic *Farms* 800-649-1362
www.docmagic.com



13 of 15
2008-006291-0

—————————— [Space Below This Line For Acknowledgment] ——————————

State of __ALASKA__

3rd Judicial District (or County of __Anchorage__ or Municipality of __ANCHORAGE__ )

The foregoing instrument was acknowledged before me this _____

by __RODNEY L TRUDELL__



Signature of Person Taking Acknowledgement

_Marketing Manager_

Title or Rank

(This area for official notarial seal)

Serial Number, if any

ALASKA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3002 01/01                     Page 14 of 14

DocMagic *CForms* 800-649-1362
www.docmagic.com

Description: Anchorage AK Document-Year.DocID 2008.6291 Page: 14 of 15
Order: LLeech Comment:

# EXHIBIT "A"

The South one-third (S 1/3) of the East one-half (E ½) of Lot 3, Block 20, MOUNTAIN VIEW SUBDIVISION, according to the official plat thereof, filed under Plat No. P-5, records of the Anchorage Recording District, Third Judicial District, State of Alaska.

15 of 15

2008-006291-0



## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR COAST 2 COAST FUNDING GROUP, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all liens, and any rights due or to become due thereon to NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS, 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust is dated 02/05/2008 and executed by RODNEY L TRUDELL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR COAST 2 COAST FUNDING GROUP, INC., ITS SUCCESSORS AND ASSIGNS and recorded as Doc # 2008-006291-0, in the ANCHORAGE Recording District, AK.

Dated this 13th day of July in the year 2022
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR COAST 2 COAST FUNDING GROUP, INC., ITS SUCCESSORS AND ASSIGNS.

*Tracy Rogers*

TRACY ROGERS
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 13th day of July in the year 2022, by Tracy Rogers as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR COAST 2 COAST FUNDING GROUP, INC., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*Vicky McCoy*

VICKY MCCOY
COMM EXPIRES: 12/18/2022

VICKY MCCOY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG285301
EXPIRES: 12/18/2022

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To: Nationstar Mortgage LLC, C/O Nationwide Title Clearing, LLC 2100 Alt. 19 North, Palm Harbor, FL 34683
NSBTA 433024433 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) COST CENTER 9251 MIN 100497100000083861 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T132207-12:16:34 [C-1] EFRMAK1

*D0096111383*

# IN THE DISTRICT COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT, AT ANCHORAGE

RODNEY L. TRUDELL,

       Plaintiff

vs.

HILLARY R. MCCORMACK
COAST 2 COAST FUNDING GROUP INC.
MR. COOPER/NATIONSTAR MORTGAGE
LLC.

       Defendant

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 3AN-24-09048CI

## NOTICE OF PENDENCY OF ACTION

## LIS PENDENS

    PLEASE TAKE NOTICE that this action was commenced in the above named court by the above entitled Plaintiff against the above entitled Defendants, and is now pending.

0

NOTICE OF PENDENCY OF ACTION

The Plaintiff alleges a real property claim affecting real property located at: 604 N Bragaw Street, Anchorage, AK 99508 APN: 004-041-17-000.

The land referred to herein is situated in the Anchorage Recording District, Alaska and bears the legal description as follows:

The South one-third (S 1/3) of the East one-half (E ½) of Lot 3, Block 20, Mountain View Subdivision, according to the official plat thereof, filed under Plat No. P-5, records of the Anchorage Recording District, Third Judicial District, State of Alaska.

Dated: _____09-26-2024_____          Respectfully submitted,

/s/ Rodney L. Trudell
Rodney L. Trudell

1

**NOTICE OF PENDENCY OF ACTION**

## VERIFICATION

I am the Plaintiff in this action. I have read the foregoing complaint and it is true to my knowledge, and there are numerous material claims pursuant to Federal Dual Tracking violations under 12 C.F.R. § 1024.41 and a number of private actions pursuant to 15 USCS 1640(k) CIVIL LIABILITY and other actions pursuant to 15 USCS 1635(B) NOTICE OF RESCISSION and RESPA claims undisputed and I dispute change ownership pursuant to Alaska Law AMC 12.15.015(G). by which these matters given via notice to opposing parties and the court and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of Alaska that the foregoing is true and correct.

Defendant: _____ /s/ Rodney L. Trudell _____

Date of execution _____ 09-24-2024 _____

_____

Process Server

2

**NOTICE OF PENDENCY OF ACTION**

Alaska Court Services

600 Barrow Street #100

Anchorage, Alaska 99501

907-258-3211

Or

To Be Determined

3

**NOTICE OF PENDENCY OF ACTION**